John **BALDERAMA** and Dolores Balderama, Appellant,

v.

**WESTERN CASUALTY LIFE INSURANCE COMPANY,** Appellee.

No. 04–89–00288–CV.

Court of Appeals of Texas, San Antonio.

July 11, 1990.

Rehearing Denied Aug. 21, 1990.

Malcolm C. Halbardier, Law Office of Malcolm C. Halbardier, San Antonio, Robert D. Huerta, Huerta & Reed, Irving, for appellant.

Daniel A. Bass, Jane E. Bockus, Clemens & Spencer, San Antonio, for appellee.

Before REEVES, PEEPLES and CARR, JJ.

## OPINION

REEVES, Justice.

This appeal addresses the interpretation of two insurance policies, one entitled "Accident Policy" and the other titled "Catastrophic Medical Hospital Policy." The trial court held that a child born after the issuance of the policies was not entitled to benefits under the catastrophic medical policy.

John Balderama and his wife, Dolores Balderama, (plaintiffs) contend the trial court erred:

1. in not finding a single, unified contract which constituted one policy of insurance;

2. in permitting parol evidence as to the allocation of premiums paid for the insurance coverage; and

3. in failing to make more specific findings of fact and conclusions of law, upon the request of plaintiffs.

Western Casualty Life Insurance Co. (defendant), by cross point, contends the trial court erred in severing the breach of contract cause of action from the noncontractual causes, namely negligence, bad faith, and violations of the Texas Deceptive Trade Practice Act.

## FACTS

John and Dolores Balderama (plaintiffs) made an application for accident, health and life insurance with defendant on behalf of themselves and their three minor children. The application was accepted, and in time they received in the mail the following documents:

1. One designated "Catastrophic Medical Hospital Policy." This document carries the policy number 0045085. It provides for a monthly premium of $156.70 per month. It names as insured John D. Balderama and "other members of the Family Group, if any, named in the application attached to this policy."

2. The application listing the name of Mr. & Mrs. Balderama and their three children. It is numbered 045085 and refers to an endorsement form OP–ACC–DD. It specifies the premium in two separate amounts, $138.30 and $18.50, for a total of $156.70.

3. One designated as an endorsement to policy number 45085; it is titled "Out Patient and Hospital Confinements Benefits."

4. One designated "Accident Policy." At the lower left hand side of the first page of the instrument is the wording, Form OP–ACC–DD; the same form number referred to in the application.

All the above documents were mailed to the plaintiffs in the same envelope. After receipt of the instruments and while the policies were in force, another child was born to the plaintiffs. This child suffered serious birth defects which required extensive medical care. Plaintiffs made a claim for the expenses under the Catastrophic Medical Hospital Policy coverage. The defendant denied coverage under the policy, giving as a reason the after-born child was not a named insured. The defendant did acknowledge liability under the Accident Policy coverage and tendered payment.

The trial court held there was one contract of insurance which consisted of two separate insurance policies; one a Cata-

strophic Medical Hospital Policy and the second an Accident Policy. It further found that the Catastrophic Medical Hospital Policy and endorsement did not provide the after-born child with coverage because the child was not named in the application attached to the policy.

## CONSTRUCTION OF THE INSURANCE POLICIES

■ Where the language in an insurance policy is subject to two or more reasonable interpretations, the construction affording coverage will be used. If the contract is ambiguous, and the insurance contract is capable of two constructions, one granting recovery and the other denying it, the one granting recovery will prevail. *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963); *Mainer v. American Hosp. & Life Ins. Co.*, 371 S.W.2d 717, 721 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.). However, this does not affect the general rule that contracts of insurance are to be construed as other contracts, wherein all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. *Republic Nat'l Life Ins. Co.*, at 94.

■ The instrument designated Accident Policy provides under Part V(A): "This contract is made with the Insured, who has signed the application herefore and those dependent members of the Insured's family shown on the application attached hereto, and every transaction relating to this policy shall be between the Company and each such member." Part V(B) provides, in part: "... However, in regard to any child born to the insured, such coverage is effective from the moment of birth and is not subject to any evidence of insurability or acceptance of such newborn child and will pay for congenital defects in such newborn child...."

The instrument designated "Catastrophic Medical Policy" provides in the insuring clause, "We hereby insure the Applicant, first named in the Policy Schedule, after this called the Insured Person (you, your, or yours) and all other dependent members of the Insured Person's family, if any *named in the application* (copy of which is attached) all of whom are after this called the Family Group, and will pay expense of hospital confinement...." The definition clause provides, "INSURED PERSON (You, Your, Yours) means the Insured and all other dependent members of the Insured Person's family, if any *named in the application.*" (Emphasis ours). Found in Part IV of the contract is the following, "This policy, including the endorsements and attached papers, if any, constitute the entire contract of insurance."

TEX. INS. CODE ANN. art. 3.70–2(E) provides:

No individual policy or group policy of accident and sickness insurance, including policies ... delivered or issued for delivery to any person in this state which provides for accidental and sickness coverage of additional newborn children or maternity benefits, may be issued in this state if it contains any provisions excluding or limiting initial coverage of a newborn infant for a period of time, or limitations or exclusions for congenital defects of a newborn child.

The thrust of the plaintiffs' argument is that the instrument designated as Accident Policy and the one designated as Catastrophic Medical Hospital Policy are actually one unified policy. Therefore, the contract violates TEX. INS. CODE ANN. art. 3.70–2(E), and they are entitled to recover their medical expenses under the Catastrophic Medical Hospital Policy.

We agree the two policies are inextricably joined by the application attached to the Catastrophic Medical Hospital Policy. The instrument designated Accident Policy carries no policy number, nor does it name an insured. Without referring to the application, the insured is unknown. The application refers to endorsement form OP–ACC–DD, the same form number found on the front page of the Accident Policy. However, this linkage does not meld the provisions and conditions of coverage of the two policies. The provisions, conditions, and exclusions found within the Cata-

strophic Medical Hospital Policy do not add to nor diminish the coverage within the Accident Policy. *See Southland Life Ins. Co. v. Johnston*, 97 S.W.2d 518 (Tex.Civ. App.—Amarillo 1936, writ ref'd) (accident policy and life policy); *Cook v. Continental Casualty Co.*, 160 S.W.2d 576 (Tex.Civ. App.—Austin 1942, no writ).

 Plaintiffs contend that by separating the coverage and provisions in the contract defendant destroys the benefit which art. 3.70–2(E) was designed to guarantee; i.e. providing for after-born children. The defendant could not put something into the policy which would abrogate the purpose of the statute. *See Berry v. Dairyland County Mut. Ins. Co. of Texas*, 534 S.W.2d 428, 431 (Tex.Civ.App.—Fort Worth 1976, no writ). When the Legislature specifies a particular extent of insurance coverage, any attempt to void or narrow such coverage is improper and ineffective. *Unigard Security Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1978).

But the insurance policies of defendant do not narrow or circumvent art. 3.70–2(E). This statute specifically prohibits any provision in an insurance policy that limits initial coverage of a newborn infant for a period of time or limits or excludes congenital defects of a newborn child. An exclusion takes something out of the coverage that would otherwise be included in it. *Liberty Mut. Ins. Co. v. American Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1977). The Catastrophic Medical Hospital Policy makes no such provision regarding after-born children. It is specific in insuring only those named in application. Additionally, there is no provision which limits or excludes coverage of a newborn child in the Accident Policy. We are of the opinion that there is no coverage for after-born children provided for in that portion of the insurance contract designated as Catastrophic Medical Hospital Policy. Appellant's first point of error is overruled.

## THE PAROL EVIDENCE CONTENTION

 If a contract is clear and unambiguous, ordinarily parol evidence is inadmissible to vary the terms or to show the construction placed thereon by the parties. *Murphy v. Dilworth*, 137 Tex. 32, 151 S.W.2d 1004 (1941). Over the objection that the testimony was in violation of the parol evidence rule, defendant's witness testified why the premium was divided into two amounts, $138.30 and $18.40. His explanation was that one amount was for the payment of the Accident Policy and the other was for the payment of the Catastrophic Medical Hospital Policy. This part of the contract is ambiguous and the testimony was therefore admissible. However, other than this one exception, the insurance contract is clear and unambiguous. Appellant's second point of error is overruled.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In compliance with TEX.R.CIV.P. 296 the trial court made findings of fact and conclusions of law, which are summarized as follows:

## FINDINGS OF FACT

1. Two policies were sent by the defendant to the plaintiffs.

2. One policy was a Catastrophic Medical Hospital Policy with an accidental death and dismemberment/outpatient and hospital confinement endorsement, one was an Accident Policy.

3. After the issuance of both policies, a child was born to plaintiffs; it was not named in the application for insurance which was made a part of the Catastrophic Medical Hospital Policy.

## CONCLUSIONS OF LAW

1. There was one contract of insurance between the plaintiffs and the defendant consisting of two separate insurance policies; one a Catastrophic Medical Hospital Policy with endorsement and the other an Accident Policy.

2. The Catastrophic Medical Hospital Policy with endorsement did not provide coverage for the after-born child because she was not named in the application.

3. The newborn provision of the Accident Policy applied only to the coverage provided in the Accident Policy and not to the Catastrophic Medical Hospital Policy with endorsement.

4. The Catastrophic Medical Hospital Policy with endorsement does not provide coverage for the newborn child.

■ The requested additional findings of fact and conclusions of law of plaintiffs are summarized:

The policy number of the Catastrophic Medical Hospital Policy and the Accident Policy; whether one policy was an endorsement of another; the premiums paid on each policy; did the application for insurance cover each policy; whether the Accident Policy provided coverage for newborn children; whether the policies were issued and received at the same time; whether art. 3.70–2(E) did apply to the Accident Policy; and whether or not the policies should be construed; as a matter of law, against the defendant. The pertinent part of TEX.R.CIV.P. 298 provides:

> After the judge so files original findings of fact and conclusions of law, either party may within five days, request of him specified further, additional, or amended findings; and the judge shall within five days after such request, and not later prepare and file such further, other or amended findings and conclusions as may be proper, whereupon they shall be considered as filed in due time. (Emphasis ours).

The request for additional findings of fact and conclusions of law were filed before the original findings of fact and conclusions of law were filed by the court. The record does not reveal if the trial court considered plaintiff's additional request. The original findings of fact and conclusions of law properly and succinctly relate the ultimate findings of fact and law necessary to apprise the plaintiffs of adequate information for the preparation of their appeal. The failure to file additional findings of fact and conclusions of law did not prejudice the rights of plaintiff. *Sanchez v. Dickinson,* 551 S.W.2d 481 (Tex.Civ.App.

—San Antonio 1977, no writ); *Hazelwood v. Jinkins,* 580 S.W.2d 33, 36 (Tex.Civ.App. —Houston [1st Dist.] 1979, no writ). Appellant's third point of error is overruled.

## SEVERANCE

Defendant's cross-point asserts the trial court erred in severing the plaintiffs' breach of contract cause of action from its causes of action for negligence, bad faith, and violations of the Deceptive Trade Practices Act. Prior to the hearing on the merits of the breach of contract cause of action, the trial court separated the noncontractual causes of action to be heard at a later date. At the conclusion of the hearing on the contractual cause of action, defendant orally moved for judgment on all causes of action, contending the favorable ruling on the contract cause of action was dispositive of the noncontractual causes of action as well. The motion was overruled and the noncontractual causes were severed.

■ TEX.R.CIV.P. 41 provides, in part: "... Any claim against a party may be severed and proceeded with separately." The trial court's granting a motion to sever will not be disturbed on appeal except for an abuse of discretion. *Kramek v. Stewart,* 648 S.W.2d 399 (Tex.App.—San Antonio 1983, no writ). A severed cause must be one that can be asserted independently, and it must not be so interwoven with the remaining action that they involve identical facts and issues or, in some circumstances, relate to the same subject matter. *S.O.C. Homeowners Assoc. v. City of Sachse,* 741 S.W.2d 542, 544 (Tex.App.—Dallas 1987, no writ); *Weaver v. Jock,* 717 S.W.2d 654 (Tex.App.—Waco 1986, writ ref'd n.r.e.).

The essential issues to be resolved in a breach of contract cause of action are different than those to be resolved in a negligence cause of action, or a bad faith cause of action, or in a D.T.P.A. cause of action.

■ A cause of action for breach of contract is composed of two elements: one, the contract, and two, the breach thereof. *Panther Oil & Grease Mfg. v. Schumaker,* 166 S.W.2d 205, 207 (Tex.Civ.App.—Galves-

ton 1942, no writ). A contract is an enforceable obligation. *Plains Cotton Coop. Assoc. v. Wolf,* 553 S.W.2d 800, 806 (Tex. Civ.App.—Amarillo 1977, writ ref'd n.r.e.). A binding and enforceable contract is formed when after an offer is made the offer is unconditionally accepted and valuable consideration passes between the parties. *First Texas Savings Assoc. v. Jergins,* 705 S.W.2d 390, 391 (Tex.App.—Fort Worth 1986, no writ); *West Texas Production Credit Assoc. v. Harding Chemicals,* 407 S.W.2d 950, 952 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). A contract is the primary right of one party and a breach is act or omission on the part of another without which there could be no cause of action or right of recovery. *Panther Oil & Grease Mfg. v. Schumaker, supra.*

 Negligence is the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. *Thompson v. Gibson,* 156 Tex. 593, 298 S.W.2d 97, 105 (Tex.1957); *Vargas v. City of San Antonio,* 650 S.W.2d 177, 179 (Tex. App.—San Antonio 1983, writ dismissed). The essential elements of negligence are: duty, a breach of that duty, the breach was proximate cause of injuries, and damages were incurred. *McKinley v. Stripling,* 763 S.W.2d 407, 409 (Tex.1989).

 There is a duty on the part of insurers to deal fairly and in good faith with their insureds. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). This duty of good faith and fair dealing arises out of a special relationship of trust between the insured and the insurer. In the insurance context a special relationship arises out of the parties unequal bargaining power which would allow unscrupulous insurers to take advantage of the insured's misfortune in bargaining for settlement or resolution of claims. The duty of good faith and fair dealing is thus imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. A cause of action for bad faith is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or the delay. *Arnold,* at 167.

A D.T.P.A. cause of action is a cause of action which is statutorily based. TEX. BUS. & COM. CODE ANN. § 17.41 *et seq.* and specifically § 17.46 (the "laundry list"). TEX.BUS. & COM. CODE ANN. § 17.46 entitled "Deceptive Trade Practices Unlawful" provides:

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(There follows a list of 24 acts the Legislature has declared unlawful, each describing false, misleading or deceptive acts.)

\* \* \* \* \* \*

(d) For the purposes of the relief authorized in Subdivision (1) of Subsection (a) of Section 17.50 of this subchapter, the term "false, misleading, or deceptive acts or practices" is limited to the acts enumerated in specific subdivisions of Subsection (b) of this section.

 The essential issues to be resolved in a breach of contract cause of action are different from those to be resolved in a negligence cause of action, a bad faith cause of action, and a D.T.P.A. cause of action or violation. We find no abuse of discretion in the trial court severing the noncontractual causes of action, nor do we find that the ruling on the contractual cause of action was dispositive of the noncontractual causes of action. Defendant's cross-point is overruled.

The judgment of the trial court is affirmed.